IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Larry Froistad, )<br>)<br>        Petitioner, )<br>)<br>vs. )<br>)<br>Michael Pacheco, Warden, Wyoming )<br>Medium Correctional Institute,[1] )<br>)<br>        Respondent. ) | Case No. 1:21-cv-124<br><br>**ORDER** |

      This case presents a question of whether a habeas petition, filed pursuant to 28 U.S.C. § 2254, is "second or successive" so that this court could consider it only if authorized by the Court of Appeals. Though recognizing the procedural pitfalls of the Antiterrorism and Effective Death Penalty Act (AEDPA) and the harshness of application of that statute to this case, the court concludes the petition is "second or successive" and must therefore be dismissed.

## Background

      A 1995 house fire resulted in the death of petitioner Larry Froistad's five-year-old daughter. In 1998, Froistad confessed online to starting the fire and pleaded guilty to murder. In 2002, he filed his first habeas petition challenging the murder conviction. He now challenges that same conviction, asserting new evidence demonstrates he is actually innocent of the crime and a change in the law permits him to file the current

---

      [1] Petitioner Larry Froistad is confined at the Wyoming Medium Correctional Institute. Thus, under Rule 2 of the Rules Governing Section 2254 Cases, he named the Wyoming Medium Correctional Institute's warden as the respondent. Venue is proper in this district because Froistad was convicted and sentenced in North Dakota. See 28 U.S.C. § 2241(d).

habeas petition. Asserted evidence includes, in part, testimony of a former federal prosecutor, who states there was insufficient evidence to support Froistad's murder conviction.

Pursuant to Rule 4 of the Rules Governing Section 2254 Cases, the court conducted a preliminary review of the habeas petition, ordered service on respondent, and directed respondent to respond to the petition. Respondent filed a document captioned "Objection to Order to Respond to Section 2254 Petition." (Doc. 8). In that document, respondent contended this court does not have jurisdiction over Froistad's habeas petition. Because Froistad filed the 2002 habeas petition, respondent argues the pending petition is a second or successive petition and therefore cannot be considered without authorization from the Eighth Circuit Court of Appeals. Id. Because respondent requested dismissal of Froistad's petition for lack of subject matter jurisdiction, the court construed the filing as a motion to dismiss and permitted Froistad to respond to the motion. (Doc. 9).

After Froistad responded to the motion to dismiss, (Doc. 11), respondent moved for an extension of time to respond to the habeas petition, (Doc. 14). In his request for an extension, respondent stated, "There . . . is an apparently open question whether Froistad can file a second habeas petition without conforming with 28 U.S.C. § 2244(b)(3)(A) which requires authorization from the Eighth Circuit Court of Appeals prior to filing at the district court." Id. Froistad did not oppose the motion for an extension of time, and the court granted the requested extension. (Doc. 15).

Respondent then filed a second motion to dismiss. (Doc. 16). In his memorandum in support of the second motion, respondent maintained Froistad's

2

petition is second or successive but also addressed the merits of what he interpreted as Froistad's alleged grounds for relief. (Doc. 17). Froistad responded to the second motion to dismiss. (Doc. 19).

**Law and Discussion**

**1.     The AEDPA**

Under the AEDPA, district courts lack jurisdiction to consider a second or successive habeas petition unless the petitioner first obtains an order from the appropriate court of appeals authorizing the district court to consider the petition. Burton v. Stewart, 549 U.S. 147, 152 (2007). According to the AEDPA:

> A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—
>
> (A)    the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
>    (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2). "Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." Id. § 2244(b)(3)(A). Authorization by the court of appeals is not required if a petition is not second or successive.

The phrase "second or successive petition" is a term of art, incorporating pre-AEDPA abuse-of-writ principals. That phrase does not encompass all habeas petitions filed second or subsequently in time. Magwood v. Patterson, 561 U.S. 320, 332 (2010); Crawford v. Minnesota, 698 F.3d 1086, 1089 (8th Cir. 2012). A petition is considered second or successive if it raises a claim that was or could have been asserted in an earlier petition. Crawford, 698 F.3d at 1089.

**2.     Ground(s) Raised in Froistad's Current Petition**

In his current habeas petition, Froistad asserts a single ground for relief: "Actual innocence, pursuant to McQuiggin v. Perkins, 569 U.S. 383 (2013), and related cases." (Doc. 1, p. 5). Froistad states his "claim in this petition relies solely on his argument that he is actually innocent." (Doc. 1-2, p. 37); (see also Doc. 11, p. 4) ("Froistad's legal claim is actual innocence, which rests on McQuiggin v. Perkins, 569 U.S. 383 (2013)."). But, for the asserted purposes of establishing a complete record and illustrating how an actually innocent person could have pleaded guilty, Froistad reiterated claims he made in state court, including that his guilty plea was not supported by an adequate factual basis, his trial counsel was ineffective, the state court should have ordered a competency evaluation, he was not competent to plead guilty, his plea was involuntary, and the state violated Brady v. Maryland, 373 U.S. 83 (1963). Id. at 37-49.

Respondent interprets Froistad's current habeas petition as raising an actual innocence claim along with those claims Froistad identified as having been made in the state court, (Doc. 16; Doc. 17; Doc. 18), which Froistad stated he included in his current petition only for the purposes of establishing a complete record and illustrating how he could have pleaded guilty. In response to the second motion to dismiss, Froistad

contends respondent "persists in refusing to address Froistad's main claim: that he is actually innocent." (Doc. 19, p. 3).

If respondent's interpretation of the grounds raised in Froistad's current habeas petition were correct, there would be no question the current petition is second or successive because some of those claims—that Froistad's guilty plea was not supported by an adequate factual basis, his trial counsel was ineffective, the state court should have ordered a competency evaluation, he was not competent to plead guilty, his plea was involuntary, and the state violated Brady—were or could have been raised in Froistad's 2002 habeas petition. (See Doc. 1-4, pp. 117-41) (Froistad's 2002 habeas petition). Thus, under 28 U.S.C. § 2244(b)(3)(A), pre-authorization from the Eighth Circuit Court of Appeals would be required to file the current petition. But, based on statements in Froistad's petition, it appears he raises only a claim of actual innocence.[2]

## 3.  Whether Froistad Raised Actual Innocence in the 2002 Petition

Respondent contends Froistad claimed actual innocence in his 2002 federal habeas petition. (Doc. 17, p. 5). Froistad, on the other hand, contends he "never asserted this claim in that first petition, a fact the North Dakota Supreme Court noted in oral

---

[2] Froistad contends his "actual innocence claim is a constitutional one" based on the Fifth Amendment's Due Process Clause and the Eighth Amendment's prohibition on cruel and unusual punishment. (Doc. 1-2, p. 36). The Eighth Circuit recently noted, "The Supreme Court has not decided 'whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence.'" Feather v. United States, 18 F.4th 982, 986 (8th Cir. 2021) (quoting McQuiggin, 569 U.S. at 392). In Feather, after considering the petitioner's newly discovered evidence, the Eighth Circuit concluded, "Once again, we need not decide whether a freestanding actual innocence claim is cognizable" because the petitioner's newly discovered evidence did "not meet the extraordinarily high burden of proving actual innocence." Id. (quoting Rouse v. United States, 14 F.4th 795, 803 (8th Cir. 2021)) (internal quotation marks omitted). At this juncture, this court considers only whether Froistad's petition is second or successive.

argument last year, and which the attorney for the state acknowledged."[3] (Doc. 19). But, in his current federal habeas petition, Froistad admits the 2002 federal habeas petition claimed, in part, "that he should be allowed to withdraw his guilty plea because he was innocent of murder." (Doc. 1-2, p. 20). And review of the 2002 federal habeas petition confirms Froistad alleged he was innocent of murder.[4] (Doc. 1-4, pp. 137-38).

Froistad asserts the actual innocence claim in his current federal habeas petition is different from that raised in the 2002 petition because it relies on different facts, stating "despite his diligence he has never been able to assert the factual claims he [now asserts]." (Doc. 11, p. 4). Froistad states his current actual innocence claim relies on new evidence, including (1) a "new understanding of false confessions" and his susceptibility to making a false confession; (2) expert opinions following recent psychological and psychiatric evaluations of Froistad; (3) development in the field of computer-mediated communication that may "explain why Froistad would falsely confess online to murdering his daughter"; and (4) testimony of United States Magistrate Judge Clare Hochhalter, a former Assistant United States Attorney who prosecuted Froistad in federal court in 1998 on a charge related to the state's prosecution of the murder case, who later testified there was insufficient evidence to support Froistad's murder

---

[3] Review of a recording of the oral argument shows the state acknowledged that Froistad did not raise actual innocence in the state court post-conviction proceedings that resulted in the North Dakota Supreme Court's 2002 opinion in Froistad v. State, 641 N.W.2d 86 (N.D. 2002). See N.D. Courts, https://www.ndcourts.gov/supreme-court/dockets/20200274 (play "Oral Argument"). The claims raised in Froistad's 2002 federal habeas petition were not discussed during the oral argument.

[4] Froistad's 2002 habeas petition was dismissed as time barred under 28 U.S.C. § 2244(d)(1), without consideration of Froistad's claim of innocence. (Doc. 1-26).

conviction. (Doc. 11, pp. 5-6); (see also Doc. 19, p. 2). The court need not determine whether Froistad's current habeas petition raises the same innocence claim as raised in the 2002 petition. If it does raise the same claim, there is no question the current petition would be second or successive. But even if it raises a different claim, the petition may still be considered second or successive under case law interpreting the AEDPA.

**4.      Claims Relying on New Factual Predicates or on a Change in the Law**

Froistad contends his actual innocence claim relies on newly discovered facts, McQuiggin has "been found to be a 'change in the law' that permits district courts to determine whether petitioners like Froistad have made an adequate showing of actual innocence," and "if a petitioner can make a showing of actual innocence, 'McQuiggin's change in the law is almost certainly an exceptional circumstance'" warranting consideration of his current habeas petition on the merits. (Doc. 11, p. 4) (quoting Satterfield v. Dist. Att'y Phila., 872F.3d 152, 163 (3d. Cir. 2017)). Though the Eighth Circuit has not addressed the precise question, other courts have held that claims that were ripe at the time of the prior petition but rely on new factual predicates or on a change in the law require preauthorization from a court of appeals.

In a Fifth Circuit case cited by many courts, Leal Garcia v. Quarterman, the petitioner (Leal), relying on an earlier Fifth Circuit case, In re Cain, 137 F.3d 234 (5th Cir. 1998), argued his petition was not successive because it was based on a claim that was unavailable to him at the time of his first habeas petition. 573 F.3d 214, 220 (5th Cir. 2009). Leal was convicted of killing a sixteen-year-old girl during a sexual assault. He filed his first federal habeas petition in March 2000 in the Western District of Texas. In March 2004, seven months before the Western District of Texas denied habeas relief,

7

the International Court of Justice (ICJ) held the United States had violated Leal's right to consular access under the Vienna Convention and ordered review of Leal's conviction and sentence.[5] In October 2004, the Western District of Texas denied habeas relief. In February 2005, President George W. Bush ordered state compliance with the ICJ's mandate. After determining in November 2006 that the ICJ's decision and the presidential declaration were not binding on the state of Texas, in March 2007, the Texas Court of Criminal Appeals denied Leal the relief to which he had asserted entitlement because of the ICJ's decision and the presidential declaration. Id. at 216-18.

In March 2007, Leal filed his second federal habeas petition, alleging, as he did in the state courts, the ICJ's decision and the presidential declaration entitled him to relief. The Fifth Circuit determined Leal's March 2007 petition was not successive because the presidential declaration was not issued until after Leal's first petition was denied and because Texas did not refuse to comply with the presidential order until well after the resolution of Leal's first habeas petition. Id. at 224. The Fifth Circuit described the timing of the defect arising as a "critical fact" and stated, "Were Leal's second petition seeking review of his conviction grounded solely on the failure to provide him consular access, his claim would be successive." Id. at 224 n.51.

Though the Fifth Circuit determined Leal's later filed habeas petition was not second or successive, it determined the expansive interpretation of Cain that Leal advocated would run afoul of the AEDPA:

> To read Cain as does Leal would require us to hold that a petition is non-successive if it rests on a rule of constitutional law decided after the

---

[5] The case before the ICJ involved fifty-one Mexican citizens convicted of capital crimes, one of whom was Leal, and the ICJ ordered review of the conviction and sentence of each of those individuals.

petitioner's first habeas proceeding because such a claim would not have been previously available. But § 2244(b) prohibits such a result. Newly available claims based on new rules of constitutional law (made retroactive by the Supreme Court) are successive under § 2244(b)(2)(A): Indeed, this is the reason why authorization is needed to obtain review of a successive petition. Leal's view of Cain would permit an end-run around § 2244. The new rule of constitutional law would be non-successive because it was previously unavailable, so no authorization would be required. Were Leal correct, § 2244(b)(2) would be rendered surplusage.

A second petition based on newly discovered evidence presents a similar, although less pristine, example of the problem created by Leal's proffered interpretation. Leal's view of Cain would permit petitioners filing later habeas petitions to assert that, because the evidence was not previously discovered or discoverable, the claim was unavailable; therefore, the later petition is non-successive. Again, AEDPA forbids such a reading: Section 2244(b)(2)(B)(i) states that claims based on a factual predicate not previously discoverable are successive.

. . . .

. . . . In essence, if the purported defect existed, or the claim was ripe, at the time of the prior petition, the later petition is likely to be held successive even if the legal basis for the attack was not. If, however, the purported defect did not arise, or the claim did not ripen, until after the conclusion of the previous petition, the later petition based on that defect may be non-successive.

Leal Garcia, 573 F.3d at 221 (footnotes omitted).

In Stewart v. United States, the Eleventh Circuit relied on the Fifth Circuit's reasoning in Leal Garcia in concluding a petitioner's habeas petition was not second or successive. 646 F.3d 856 (11th Cir. 2011). The petitioner in Stewart was convicted of distributing drugs and was sentenced as a career offender in June 2002. Id. at 857. In May 2004, the petitioner moved for additional time to file a § 2255 petition, noting he intended to raise an ineffective assistance of counsel claim because of his attorney's failure to investigate the state convictions on which his career offender enhancement

9

was based. His motion was denied. In September 2004, he filed a habeas petition, but the petition was dismissed as time barred.

Meanwhile, the petitioner had begun the process of challenging the predicate state offenses. From August 2002 through March 2003, the petitioner gathered records related to his state court convictions, and he filed a state habeas petition in April 2003, which resulted in vacatur of his state convictions in July 2008. The following month, the petitioner filed a second § 2255 petition, requesting his June 2002 career offender enhancement be vacated pursuant to Johnson v. United States, 544 U.S. 295 (2005). The district court concluded it was a successive habeas petition and, even if it were not, the petitioner did not act diligently in challenging his state convictions. Id. at 858.

The Eleventh Circuit noted Johnson held that a state court order vacating a defendant's predicate conviction can form the basis of a § 2255 claim. It therefore determined the petitioner's "situation [fell] within what the Fifth Circuit recognized [in Leal Garcia as] a small subset of unavailable claims that must not be categorized as successive." Id. at 863. The Eleventh Circuit concluded that because the petitioner's state convictions were not vacated until July 2008, his 2008 habeas petition was not successive. Id. at 865.

Like the Fifth and Eleventh Circuits, the Eighth Circuit has recognized the importance of the timing of the defect giving rise to a petitioner's claim in determining whether preauthorization is required. In Singleton v. Norris, the Eighth Circuit determined a habeas petition filed in 2000 was not second or successive when the petitioner, who had filed two earlier habeas petitions in 1982 and 1993, challenged the state's 1997 mandatory medication order that resulted in resolution of the petitioner's

psychotic symptoms and the subsequent scheduling of his execution. 319 F.3d 1018, 1021 (8th Cir. 2003). The petitioner argued the state could not restore his competency through the use of forced medication and then execute him. Id. at 1022. The Eighth Circuit determined the 2000 habeas petition was not second or successive because the petitioner's claim did not arise until he was subject to the involuntary medication order and scheduled for execution. Id. at 1023.

Another district court in this circuit considered Singleton when addressing a petitioner's subsequent habeas petition based on newly discovered evidence. In that case, the District of Minnesota recognized cases challenging a new involuntary medication order, like that in Singleton, did not address challenges to a petitioner's underlying conviction based on newly discovered evidence. Crawford v. Minnesota, No. 11-2918, 2012 WL 695893, at *3 (D. Minn. Mar. 5, 2012), aff'd, 698 F.3d 1086 (8th Cir. 2012). The Crawford court also recognized that cases challenging a petitioner's claim that he was incompetent to be executed when the incompetency arose after the initial habeas petition was filed, as was the case in Panetti v. Quarterman, 551 U.S. 930 (2007), did not address challenges to a petitioner's underlying conviction based on newly discovered evidence. Id.

In Crawford, the petitioner filed his initial habeas petition in June 2004, and the petition was dismissed on the merits with prejudice. In October 2011, the petitioner filed another habeas petition based on evidence discovered in 2006 that he alleged the state had suppressed in violation of Brady v. Maryland, 373 U.S. 83 (1963). The district court cited Eighth Circuit cases, decided both before and after passage of the AEDPA, that suggested subsequent petitions challenging underlying convictions based on evidence

previously concealed by the state were second or successive. Id. at *2 (citing Tyler v. Purkett, 413 F.3d 696, 705 (8th Cir. 2005); Fairchild v. Lockhart, 979 F.2d 636, 640 (8th Cir. 1992)). The district court noted its concern that applying the AEDPA's preauthorization requirement "might encourage misbehavior on behalf of prosecutors and other state actors" and further noted "the result [was] troubling." Id. at *4-5. Nonetheless, the district court determined the petition was second or successive, stating, "While it may seem unfair for courts to impose high gatekeeping standards to facts that prisoners could not have previously discovered, particularly when these facts are concealed by the state, Congress chose to implement these standards when it enacted AEDPA." Id. at *5.

On appeal, the Eighth Circuit affirmed the district court's order, noting the petitioner raised a "nonmaterial Brady claim" and the AEDPA required the petitioner to obtain preauthorization before the district court could review the merits of his petition. Crawford, 698 F.3d at 1090. Since Crawford, courts in this circuit have recognized claims for habeas relief based on evidence unavailable to the petitioner when an earlier habeas petition was filed required preauthorization by the Eighth Circuit. See e.g., Carter v. United States, No. 4:16-cv-00025, 2021 WL 6622273, at * 2 (E.D. Mo. Dec. 21, 2021); Reed v. Pugh, 19-cv-1792, 2019 WL 7842323, at *1 (D. Minn. Nov. 21, 2019), report and recommendation adopted, 2020 WL 568878, at *1 (D. Minn. Feb. 5, 2020); Moore v. Hobbs, No. 5:13-cv-00331, 2014 WL 641726, at *2 (E.D. Ark. Feb. 19, 2014); Rivera v. Smith, No. 13-cv-2643, 2013 WL 5874723, at *6 (D. Minn. Oct. 30, 2013).

In Martin v. Benson, another District of Minnesota case, the court considered Leal-Garcia, Stewart, and Singleton in determining whether a civilly committed

12

detainee's petition for habeas relief was second or successive. 815 F. Supp. 2d 1086 (D. Minn. 2011). In his first habeas petition, the petitioner challenged the state court judgment that resulted in his civil commitment. In a subsequent habeas petition, the petitioner alleged changes in state law caused his continued confinement to become punitive in violation of the Constitution and caused the "duration of confinement" to become "not reasonably related to the purpose for which persons are civilly committed." Id. at 1090. The district court, relying on Leal-Garcia, Stewart, and Singleton, concluded the petition was not successive:

> What makes the current Petition unusual, and non-successive, is not that Petitioner's claims are based on new and previously unavailable law or facts. Those factors alone would not be sufficient to excuse Petitioner from the preauthorization requirement. The current Petition is unusual and non-successive because Petitioner is not presently challenging the validity of his original civil commitment order; he is not claiming that his civil commitment was invalid ab initio. Instead, Petitioner is claiming that regardless of the legality and validity of his civil commitment back in 2004, his continuing confinement has subsequently become unconstitutional because of (a) subsequent amendments to the Minnesota statutes governing the commitment of [sexually dangerous persons], and subsequent changes in [the Minnesota Sex Offender Program (MSOP)] policies that were implemented pursuant to the amended statutes, and (b) subsequent changes in the actual conditions of his confinement at MSOP, which allegedly resulted from the statutory amendments and ensuing policy changes.
>
> If Petitioner's current claims challenged the validity of his commitment order per se, his current Petition would be deemed a second or successive petition requiring a pre-authorization order, even if the claims were based on new and previously unavailable legal rulings or factual information. However, Petitioner is not seeking to revisit the commitment order that was reviewed and upheld in [his first habeas petition]; he is now claiming that he should be released from custody, regardless of the validity of his commitment order, because the current conditions of his confinement make it unconstitutional for the state to continue to confine him.
>
> Petitioner's current claims for relief could not have been raised in [his first habeas petition] because they are predicated on subsequent changes in the statutes, MSOP policies, and conditions of Petitioner's

confinement. Those changes alone, however, do not make the current Petition non-successive. There must be something more, otherwise § 2244(b)(2) and (3) would be rendered meaningless, for the reasons discussed in Leal Garcia and Stewart. The real reason that the current Petition is non-successive is that it is based on new law and facts and the claims presented in the Petition do not challenge the validity of the original commitment order, but only challenge Petitioner's continuing confinement in light of the alleged new law and facts.

This Court finds the current case to be most analogous to habeas cases in which a state prisoner seeks to be released on parole, or claims that his imprisonment is otherwise being wrongly extended beyond his proper release date. In such cases, the prisoner will be allowed to seek relief in a § 2254 habeas corpus petition, even if he previously challenged the constitutionality of his conviction in an earlier § 2254 petition that was denied on the merits. A later petition, challenging only the postponement of the prisoner's release, is not deemed to be a second or successive petition that requires a pre-authorization order, because the petitioner is not attempting to re-challenge his original conviction and sentence.

Id. at 1095-96 (footnotes omitted).

In summary, the cases discussed above demonstrate that a subsequent habeas petition is considered "second or successive" when it challenges the original conviction and the claimed defect existed at the time of the first habeas petition. This is true even when a subsequent petition is based on newly discovered evidence or a new rule of constitutional law.

5.  **Froistad's Current Petition is "Second or Successive"**

Unlike the petitioner in Martin, Froistad is challenging his original judgment of conviction. And he has maintained his innocence since before filing his 2002 federal habeas petition: In other words, the alleged defect existed at the time of the prior petition. Though Froistad asserts compelling newly discovered evidence[6] and new law

---

[6] In an affidavit, Judge Hochhalter noted an FBI special agent, who interviewed Froistad at length, stated "her belief that Froistad did not kill his daughter." (Doc. 1-17,

would permit this court to consider the merits of his petition, the AEDPA and case law suggest preauthorization is required.

The court recognizes the AEDPA is a procedural minefield.[7] Unfortunately, Froistad's first habeas petition succumbed to an explosive mine—it was dismissed as untimely because of an error of his counsel. In the order dismissing Froistad's first petition, the court stated:

> Froistad's counsel candidly admit[ted] that he was not aware of the one-year statute of limitations contained in § 2244 and that he did not research the applicable federal statutes until after the time expired. While the result is harsh, Eighth Circuit precedent clearly states counsel's failure to

---

p. 1). It is unusual, indeed, to have evidence supporting a petitioner's habeas claims from a former prosecutor and a law enforcement agent.

[7] As aptly described by Third Circuit Judge Theodore McKee:

> The labyrinthine complexity of federal habeas review has caused one noted jurist to conclude that AEDPA's "thicket of procedural brambles" is one of the most difficult legal schemes for an attorney to navigate. In re Davis, 565 F.3d 810, 827 (11th Cir. 2009) (Barkett, J., dissenting). Indeed, AEDPA's procedural obstacle course compares to the notoriously vexing Rule Against Perpetuities insofar as both enmesh the unwary (or unseasoned) lawyer in a procedural minefield that can put him or her out of court. Even if a petitioner's claims are eventually heard in federal court, initial missteps can increase the expense and time of the litigation there. See, e.g., Maples [v. Thomas, 566 U.S. 266, 270 (2012)] (noting that the issue of whether a petitioner could excuse his procedural default, caused by negligent attorneys' missing a state court filing deadline, had been litigated extensively below). Deciding issues of life and death on such procedural intricacies threatens to undermine trust and confidence in the accuracy of the criminal justice system. See Brendan Lowe, Will Georgia Kill an Innocent Man?, Time, July 13, 2007, http://content.time.com/time/nation/article/0,8599,1643384,00.html (explaining that the requirements of AEDPA made it difficult for petitioner Troy Davis to litigate his claim of actual innocence).

In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Assoc. of Phila., 790 F.3d 457, 480-81 (3d Cir. 2015) (McKee, J., concurring) (footnote omitted).

15

>understand or research applicable statutes of limitations is not a sufficient basis to invoke equitable tolling.

(Doc. 1-26, pp. 4-5). Moreover, Froistad raised an innocence claim[8] in his first petition that was not considered because the petition was decided before McQuiggin. McQuiggin held that by meeting requirements for an actual-innocence gateway claim, a petitioner who demonstrates he is actually innocent may proceed with claims that would otherwise have been time barred. 569 U.S. at 386. But because of procedural obstacles, Froistad has not had any innocence claim, or any other claim, considered by a federal court. It is simply unacceptable that any petitioner who demonstrated actual innocence would not be entitled to habeas relief, even if it were the petitioner's only claim in an untimely, successive petition.[9]

## Conclusion

In this court's opinion, Froistad's habeas petition is second or successive, and he is therefore required to seek preauthorization from the Eighth Circuit Court of Appeals permitting the district court to consider the petition. Absent an order from the Eighth Circuit Court of Appeals authorizing the district court to consider the petition, the district court lacks subject matter jurisdiction.

Respondent's motion to dismiss for lack of subject matter jurisdiction, (Doc. 8), is **GRANTED**. Respondent's alternate motion to dismiss on the merits, (Doc. 16), is

---

[8] Again, this court makes no determination whether Froistad's earlier claim is the same as that raised in his current petition.

[9] In making this statement, this court does not determine the merits of Froistad's actual innocence claim but merely illustrates that punishing and depriving an innocent person of freedom on procedural grounds is abhorrent.

**DENIED**. Froistad's petition for habeas relief, (Doc. 1), is **DISMISSED** without prejudice.

In light of the issues raised, an appeal may not be frivolous and could be taken in good faith. It is therefore **ORDERED** that a certificate of appealability be issued if one is requested. See Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997) (finding that a district court possesses authority to issue certificates of appealability under § 2253(c)). It is further **ORDERED** that an appeal may be taken in forma pauperis.

**JUDGMENT SHALL BE ENTERED ACCORDINGLY**.

Dated this 9th day of February, 2022.

/s/ Alice R. Senechal
Alice R. Senechal
United States Magistrate Judge